## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
## NORTHERN DIVISION

| | |
|---|---|
| LACY MATCZAK and FELIZITAS COX, individually and on behalf of all others similarly situated, | |
| *Plaintiffs*, | Case No._____ |
| v. | |
| ZEROED-IN TECHNOLOGIES, LLC, | JURY TRIAL DEMANDED |
| Serve: Registered Agent<br>Keith A. Goode<br>780 Elkridge Landing Road<br>Suite 208<br>Linthicum, Maryland 21090 | |
| and | |
| DOLLAR TREE, INC. | |
| Serve: Corporation Service Company<br>100 Shockoe Slip<br>Floor 2<br>Richmond, Virgina 23219 | |
| and | |
| FAMILY DOLLAR, LLC | |
| Serve: Corporation Service Company<br>2626 Glenwood Avenue<br>Suite 550<br>Raleigh, NC 27608 | |
| *Defendants*. | |

## CLASS ACTION COMPLAINT

Plaintiffs Lacy Matczak and Felizitas Cox ("Plaintiffs"), on behalf of themselves and all others similarly situated alleges the following complaint against Defendants Zerored-In Technologies, LLC; Dollar, Tree, Inc.; and Family Dollar, LLC (collectively, "Defendants"), and alleges as follows based upon personal knowledge as to their own acts, and upon investigation, their counsel's investigation, and information and belief as to all other matters.

## INTRODUCTION

1. This action is about the failure of Defendants to safeguard highly sensitive personal identifying information (PII) entrusted to them by employees and customers. The information Defendants failed to secure includes but is not limited to full names, dates of birth, and Social Security Numbers.

2. Defendant Zeroed-In Technologies, LLC ("Zeroed-In") is a data technology and analysis consulting company that provides analytical services to customers including Dollar Tree (Dollar Tree, Inc. and Family Dollar, LLC are collectively referred to as "Dollar Tree" unless otherwise identified within this complaint).

3. Zeroed-In's business model depends upon extracting client data, and in particular data about a business client's employees and customers, to create "actionable insights" to improve client businesses.[1]

4. As part of this business, Dollar Tree provided highly sensitive information about its employees and customers to Zeroed-In.

5. At least as early as August 8, 2023, Zeroed-In became aware of a major breach of its systems, which occurred between at least August 7, 2023 and August 8, 2023.

6. By August 31, 2023, Zeroed-In had identified that PII, including Social Security Numbers, had been compromised for around 1,977,486 people.

---

[1] https://www.zeroedin.com/how-it-works/

7.     However, neither Dollar Tree nor Zeroed-In provided any notice to Customers until November 27, 2023, when they began to send out written notices. This was nearly four months after the data breach had been identified and nearly three months after their own investigation into the matter had been "Concluded."

8.     The compromised PII that was present on Zeroed-In's systems at the time of the data breach included employees' names, date of birth, and Social Security numbers.

9.     On information and belief, additional PII and sensitive information was likely released beyond what has been already disclosed (beyond just name, date of birth, and SSN).

10.     Specifically, Defendant Zeroed-In advertises its services as, among other things, "proactively identify[ing] flight risks, rising stars, ideal candidates, and more using our predictive models and indicators," "captur[ing] and analyz[ing] opinion and feedback directly from the workforce," and "comparing recruiting costs against established employee metrics."

11.     On information and belief, it is not possible to provide the above indicated services with only an employee's name, date of birth, and SSN. Instead, additional personalized information about the employee would be required to be provided to Defendant Zeroed-In for their analysis software to function including but not limited to employee pay, hiring and firing dates, performance reviews, worksite location information, and more.

12.     Indeed, on information and belief, data identified as being disclosed in the breach, including SSNs, likely should have had little to no impact on the data analytics performed by Defendant Zeroed-In.  The provision of this sensitive information to third parties needlessly exposed Plaintiffs, including long past former employees, to risk without their knowledge or consent.

13.     On information on belief, Zeroed-In is a data analytics company and has no relationship with accounting, payroll, or taxation. It would have no need for some of the PII it was evidently provided with including Social Security Numbers.

14.     As of time of writing (December 29, 2023), Defendants have not clarified precisely what information has been leaked, only that name, date of birth, and SSN have been among the information which was disclosed.

15.     Defendant's information security practices were deficient. Considering the sensitivity of the information involved and the number of individuals who had their data breached (nearly 2 million individuals) Defendants had a duty take proportionate efforts to safeguard this information including PII.

16.     Defendants understood the value of this information.

17.     Defendant Zeroed-In's entire business model is centered around the value of the PII within their possession and data analytics. They advertise their security practices on their website.

18.     Defendant Dollar Tree is a fortune 500 company with more than 15,000 stores. Given its size and sophistication, Dollar Tree had both the resources to secure Plaintiffs' information and the ability to do so.

19.     Defendants had a duty to notify Plaintiffs when they became aware of the Data Breach on August 8, 2023.

20.     Defendants unreasonable delay in notifying impacted parties, including Plaintiffs, until November 27, 2023, directly harmed Plaintiffs and class members. Speed is critical in ameliorating the harm in a data breach case to allow victims to implement proper remedial measures and identity theft-security practices.

21.     The failure to implement adequate data security measures in the face of the obvious threat profile made a data breach entirely foreseeable, and indeed probable. Moreover, the length with which this breach went unreported purportedly

between August 7, 2023 and November 27, 2023 is significant. Unauthorized criminal parties had access to extremely sensitive PII for nearly four months before victims were even notified that they might be at risk.

22.     This delay in notification to victims of the breach is unacceptable and directly harms victims of the breach, including Plaintiff, by creating uncertainty about whether they have actually been harmed and the need to engage in various services and efforts in the wake of the data breach, including but not limited to examining whether PII has been sold on the dark web, taking measures to protect against identity theft crimes, expenses, and/or time spent on credit monitoring and identity theft insurance, time spent examining bank statements, time and effort spent initiating fraud alerts, and other consequential harm.

23.     Had Defendants timely advised Plaintiffs and class members of the breach to their accounts and systems, Plaintiffs and class members could have taken timely measures to protect their identities and to mitigate the harm caused by the data breach. However, because of the extraordinary negligence in delaying announcing the data breach and in notifying those directly affected, Defendants created uncertainty and allowed criminals to commit identity theft and fraud crimes against victims who had not been informed of the breach. Plaintiffs and class members had to engage in an expensive and time-consuming process to properly protect their identity which caused significant stress, anxiety, and loss of valuable time.

24.     Plaintiffs, individually and on behalf of all others similarly situated, allege claims of Negligence, Breach of Implied Contract, and Unjust Enrichment. Plaintiffs, individually and on behalf of all others similarly situated, ask the Court to compel Defendants to adopt reasonable information security practices to secure the sensitive PII that Defendants collect and store in their databases and to grant such other relief as the Court deems just and proper.

## PARTIES

*Plaintiffs*

25.    Plaintiff Felizitas Cox is a resident and citizen of Stockton, California and a former employee of Defendant Dollar Tree. She received a notification that her personal information may have been breached on November 28, 2023.

26.    Plaintiff Lacy Matczak is a resident and citizen of New Castle, Delaware and a former employee of Defendant Dollar Tree. She received a notification that her personal information may have been breached on November 28, 2023.

*Defendants*

27.    Defendant Zeroed-In Technologies, LLC is a Florida registered limited liability company with its principal place of business located at 780 Elkridge Landing Road, Suite 208, Lithicum, Maryland. Zeroed-In is an HR data analytics and consulting firm.

28.    Defendant Dollar Tree, Inc. is a fortune 500 company operating 15,115 stores in the United States and Canada. It is incorporated in Virginia and has its headquarters at 500 Volvo Parkway, Chesapeake, Virginia.

29.    Defendant Family Dollar, LLC was formed in North Carolina and also has its principal place of business at 500 Volvo Parkway, Chesapeake, Virginia.

## JURISDICTION AND VENUE

30.    This Court has subject matter jurisdiction and diversity jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The class contains more than 100 members, and many of these members have citizenship diverse from Defendants. The minimal diversity requirements of 28 U.S.C. § 1332(d)(2) are met.

31.     Zeroed-In is a citizen of Maryland because its principal place of business is in Linthicum, Maryland and one or more of its members reside in Maryland. Therefore, the Federal District Court of Maryland has general jurisdiction over Defendant Zeroed-In.

32.     This Court has personal jurisdiction over Zeroed-In because a substantial part of the acts or omissions which gave rise to Plaintiffs' claims occurred in and emanated from Maryland.

33.     This Court has personal jurisdiction over Defendants Dollar Tree, Inc. and Family Dollar, LLC because they shared Plaintiffs' and class members' PII with Zeroed-In in Maryland.

34.     Additionally, this court has personal jurisdiction over Dollar Tree and Family Dollar in Maryland because members of the putative class provided their PII to Dollar Tree and Family Dollar in Maryland, where they operate stores.

35.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district (Maryland).

## FACTUAL ALLEGATIONS

### I.     Background:

36.     Defendant Dollar Tree a major corporation and employer with at least 15,000 store locations.

37.     Plaintiffs and class members were employees of Dollar Tree.

38.     As a condition for employment, Defendant Dollar Tree required Plaintiffs and class members to provide sensitive information and PII including names, date of birth, and social security numbers.

39.    Defendant Zeroed-In is an "HR and people analytics" firm which specializes in examining workforce/employee data and providing an actionable analysis to its business customers.

40.    Defendant Dollar Tree hired Defendant Zeroed-In to perform data analytics on information provided by Dollar Tree.

41.    On information and belief, Dollar Tree intended to use the analysis provided by Zeroed in to make employment-based decisions including hiring and firing, promotion and demotion, pay, etc. Dollar Tree would use this information to increase the profitability of its commercial business empire.

42.    The data Dollar Tree provided to Zeroed-In included highly sensitive information including PII for at least approximately two million current and former employees. The information provided to Zeroed-In included names, date of birth, and social security numbers.

43.    On information and belief, Defendant Dollar Tree did not need to and should not have provided certain PII to Zeroed-In as such information would have no relevance to employment data analytics or might be based on a protected characteristic.

44.    For example, Dollar Tree appears to have provided employee dates of birth of employees to Zeroed-In. The only possible relevant data characteristic from date of birth is the age of the employee. Age is often a protected employment characteristic, and if Dollar Tree was making employment decisions based on employee ages this may have violated state and federal laws.

45.     Moreover, Dollar Tree's apparent decision to share this PII needlessly put employees at risk even when the sharing of the PII would result in negligible gain for Dollar Tree. For example, "Social Security Number" is not a characteristic associated with any relevant employment pattern or attribute. Employee Social Security Numbers should never have been provided to Zeroed-In as this data point

cannot reasonably inform its analytical models, and providing this information needlessly puts Dollar Tree's current and former employees (including Plaintiffs) at risk.

46.    Highly sensitive information, like a social security number, should be limited to individuals who "need to know" the information for a specific limited purpose.

47.    Zeroed-In did not "need to know" employee social security numbers for any reasonable business purpose.

48.    It is possible additional sensitive information, including dates of employment, wages, performance reviews, employee complaints, employee hometown/address, education, and other highly sensitive information may have been leaked in the breach. Defendants have only shared that PII including Name, Date of Birth, and Social Security numbers have been breached.

49.    The combination of name, date of birth, and social security number constitutes highly sensitive Personal Identifying Information (PII). This information is extremely valuable to criminals because it can be used to commit serious identity theft and related crimes.

50.    As a condition of employment with Dollar Tree, class members entrusted it with this PII with the understanding that the information would be kept secure and that reasonable measures would be taken to maintain and ensure its security, including notification in the event of a breach, commensurate with the value of data.

51.    As part of its offer to perform data analytics, Zeroed-In promised to protect and keep secure the sensitive information entrusted to them and to provide reasonable notice of any breach to affected parties.

52.    Zeroed-In advertised their security and privacy practices. Specifically, Zeroed-In states in its privacy policy that "we will not review, share, distribute, or

reference any Customer Data except as provided in the [subscription agreement] or as many be required by law."

**II.    The Breach**

53.    At least as early as August 8, 2023, Zeroed-In became aware of suspicious activity in its computer systems.

54.    By August 31, 2023, Zeroed-In had completed its review of the data breach and had identified what systems were accessed and whose information was breached.

55.    By August 31, 2023, Zeroed-In had identified that 1,977,486 people may have been victims in this data breach and that the breached information included at least full names, dates of birth, and social security numbers.

56.    At least as early as August 31, 2023, Zeroed-In had notified Defendant Dollar Tree of the data breach.

57.    On information and belief, senior leadership and management at Dollar Tree may have been aware of the breach and taken measures to protect themselves months before the breach was publicly disclosed.

58.    Neither Dollar Tree nor Zeroed-In notified the victims of the breach or disclosed it publicly until November 27, 2023.

59.    Defendants Zeroed-In and Dollar Tree waited nearly three months *after* the conclusion of the investigation, and nearly four months *after* the detection of suspicious activity, to notify victims including Plaintiffs.

60.    The delay between the August 8, 2023 detection of suspicious activity and the November 27, 2023 generalized notice of a breach was unreasonable and directly harmed class members.

61.    Defendants knew or should have known Defendants were victims of the data breach at least as early as August 31, 2023. In a letter dated November 27, 2023, Zeroed-In sent victims a letter which stated in part as follows:

"**What Happened?** On August 8, 2023, Zeroed-In discovered suspicious activity related to certain systems. Zeroed- In immediately took steps to secure the systems and launched an investigation into the nature and scope of the activity. Through the investigation, we determined that an unauthorized actor gained access to certain systems between August 7, 2023, and August 8, 2023. While the investigation was able to determine that these systems were accessed, it was not able to confirm all of the specific files that were accessed or taken by the unauthorized actor. Therefore, Zeroed-In conducted a review of the contents of the systems to determine what information was present at the time of the incident and to whom the information relates.

**What Information Was Involved?** This review was completed on August 31, 2023, and Zeroed-In notified Dollar Tree & Family Dollar of this incident. We are notifying you because the investigation determined that your information was present on the systems involved at the time of the incident and the information includes your name, date of birth, and Social Security number."

62.     Zeroed-In does not explain in their letter why they waited for nearly 3 months between the August 31 conclusion of its investigation and November 27, 2023 notification to victims.

63.     Zeroed-In does not provide an explanation for how their systems were breached.

64.     Zeroed-In does not identify what information was breached other than that it includes at least names, dates of birth, and social security numbers.

## III.     Defendants Failed to Comply with Reasonable Cybersecurity Standards

65.     At all times relevant to this Complaint, Defendants knew or should have known the significance and necessity of safeguarding its customers' PII and the foreseeable consequences of a data breach. Defendants knew or should have known that because it collected and maintained the PII for a significant number of employees and clients, a significant number of employees and clients would be harmed by a breach of its systems. Defendants further knew due to the nature of its business practices as a massive national retail conglomerate (Dollar Tree) and as a major HR/employment data analytics firm (Zeroed-In), that a data breach could

potentially compromise the PII of hundreds of thousands, or even millions, of people.

66.     Because PII is so sensitive and cyberattacks have become a rising threat, the FTC has issued numerous guides for businesses holding sensitive PII and emphasized the importance of adequate data security practices. The FTC also stresses that appropriately safeguarding PII held by businesses should be factored into all business-related decision making.

67.     An FTC Publication titled "Protecting Personal Information: A Guide for Business" lays out fundamental data security principles and standard practices that businesses should implement to protect PII.[2] The guidelines highlight that businesses should (a) protect the personal customer information they collect and store; (b) properly dispose of personal information that is no longer needed; (c) encrypt information stored on their computer networks; (d) understand their network's vulnerabilities; and (e) implement policies to correct security problems.

68.     The FTC also recommends businesses use an intrusion detection system, monitor all incoming traffic to the networks for unusual activity, monitor for large amounts of data being transmitted from their systems, and have a response plan prepared in the event of a breach.

69.     The FTC also recommends that businesses limit access to sensitive PII, require complex passwords to be used on the networks, use industry-tested methods for security, monitor for suspicious activity on the network, and verify that third-party service providers have implemented reasonable security measures—a step that would have been particularly prudent in light of the methods used by the perpetrators in this case.

---

[2] https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business. (last accessed 12/22/2023)

70.     Businesses that do not comply with the basic protection of sensitive PII are facing enforcement actions brought by the FTC. Failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data is an unfair act or practice prohibited pursuant to Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45.

71.     Many states' unfair and deceptive trade practices statutes are similar to the FTC Act, and many states adopt the FTC's interpretations of what constitutes an unfair or deceptive trade practice.

72.     Zeroed-In knew or should have known of its obligation to implement appropriate measures to protect its customers' PII but failed to comply with the FTC's basic guidelines and other industry best practices, including the minimum standards set by the National Institute of Standards and Technology Cybersecurity Framework Version 1.1.[3] Likewise, Dollar Tree knew or should have known that their deficient practices fell short of basic guidelines and industry best practice.

73.     Defendants' failure to employ reasonable measures to adequately safeguard against unauthorized access to PII constitutes an unfair act or practice as prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45, as well as by state statutory analogs.

74.     Defendants failed to use reasonable care in maintaining the privacy and security of Plaintiffs' and Class Members' PII. If Defendants had implemented adequate security measures, cybercriminals could never have accessed the PII of Plaintiffs and Class Members, and the Data Breach would have either been prevented in its entirety or have been much smaller in scope. Additionally, while we do not yet know the precise reasons for the breach, poor data security practices and lack of compartmentalization are common patterns in data breaches of this

---

[3] https://nvlpubs.nist.gov/nistpubs/cswp/nist.cswp.04162018.pdf. (last accessed 11/27/2023)

magnitude and sensitivity. For example, Dollar Tree could have provided anonymized data on employee performance to Zeroed-In and likely received a virtually identical analysis without risking disclosing the names, dates of birth, and SSNs for clients and employees. Finally, once Defendants became aware of the breach, they could have acted far faster and more aggressively in responding to the breach and in assisting victims in redressing harms, including sending notifications to those impacted.

75.    Personally Identifiable Information is of high value to criminals. Sensitive information can often be sold on the dark web, with personal information being sold at a price ranging from $40 to $200 and bank details with a price from $50 to $200.[4] The Data Breach exposed PII that is both valuable and highly coveted on underground markets because it can be used to commit identity theft and financial fraud. Identity thieves use such PII to, among other things, gain access to bank accounts, social media accounts, and credit cards.  Identity thieves can also use this PII to open new financial accounts, open new utility accounts, obtain medical treatment using victims' health insurance, file fraudulent tax returns, obtain government benefits, obtain government identification cards, or create "synthetic identities." Additionally, identity thieves often wait significant amounts of time— months or even years—to use the PII obtained in data breaches because victims often become less vigilant in monitoring their accounts as time passes, therefore making the PII easier to use without detection. The one year of identity protection services offered to victims is too little and far too late given the extraordinary scale of the breach and the potential for consequences lingering for years. These identity

---

[4] *Your personal data is for sale on the dark web. Here's how much it costs*, Digital Trends, Oct. 16, 2019, available at: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/  (last accessed December 22, 2023).

thieves will also re-use stolen PII, resulting in victims of one data breach suffering the effects of several cybercrimes from one instance of unauthorized access to their PII.

76.     Victims of data breaches are much more likely to become victims of identity fraud than those who have not. Data Breach victims who do experience identity theft often spend hundreds of hours fixing the damage caused by identity thieves.[5] The U.S. Department of Justice's Bureau of Justice Statistics has reported that, even if data thieves have not caused financial harm, data breach victims "reported spending an average of about 7 hours clearing up the issues."[6]

77.     The information compromised in the Data Breach—which may encompass more than has been publicly disclosed, is much more valuable than the loss of credit card information in a retailer data breach. There, victims can simply close their credit and debit card accounts and potentially even rely on automatic fraud protection offered by their banks. Here, however, the information compromised is much more difficult to remedy because the identifiers range from extremely inconvenient and awkward to change (such as full name) to impossible to change (such as date of birth). The loss of this data puts Defendants' employees and clients at additional risk for potential fraud and identity theft, and this risk will linger for years to come.

## IV.   Plaintiffs' and Class Members' Experiences

78.     As a precondition for employment with Dollar Tree, Plaintiffs provided sensitive PII including but not limited to their full name, date of birth, and social security number. Released data on class members includes, but is not limited to their full names, dates of birth, and social security numbers.

---

[5]
https://www.marylandattorneygeneral.gov/ID%20Theft%20Documents/Identityth eft.pdf. (last accessed 12/22/2023)
[6] https://bjs.ojp.gov/content/pub/pdf/vit14.pdf. (last accessed 12/22/2023)

79.     As discussed above, there is reason to believe it is probable significantly more information has been seized than merely the PII identified in the letter. Information on employee pay, performance, lengths of employment, responsibilities, store location, promotions and demotions, and more would likely have been provided to Zeroed-In and could well be implicated in the breach.

80.     Plaintiffs have taken reasonable steps to maintain the confidentiality of their PII. They relied upon Defendants' representations, experience, and sophistication to keep their information secure and confidential.

81.     As a result of the data breach, Plaintiffs were forced to take measures to mitigate the harm, including spending time monitoring their credit and financial accounts, researching the Data Breach, and researching and taking steps to prevent and mitigate the likelihood of identity theft.

82.     As a result of the Data Breach, Plaintiffs suffered actual injuries including: (a) working on behalf of/being employed by Defendant Dollar Tree, which Plaintiffs would not have done had Dollar Tree disclosed that it lacked data security practices adequate to safeguard Plaintiffs' PII from theft; (b) damages to and diminution in the value of Plaintiffs' PII—property that Plaintiff entrusted to Dollar Tree as a condition of receiving employment; (c) loss and invasion of Plaintiffs' privacy; and (d) injuries arising from the increased risk of fraud and identity theft, including the cost of taking reasonable identity theft protection measures, which will continue for years.

## CLASS ACTION ALLEGATIONS

83.     Plaintiffs bring this action as a class action pursuant to Rules 23(a) and 23(b)(1)-(3) of the Federal Rules of Civil Procedure, on behalf of themselves and a **Nationwide** Class defined as follows:

> **All persons in the United States whose PII was compromised by the Data Breach announced by Zeroed-In in 2023.**

84.     Excluded from the Nationwide Class are governmental entities, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, coconspirators, successors, subsidiaries, and assigns. Also excluded from the Nationwide Class are any judges, justices, or judicial officers presiding over this matter and the members of their immediate families and judicial staff.

85.     This action is brought and may be properly maintained as a class action pursuant to Rule 23. This action satisfies the requirements of Rule 23, including numerosity, commonality, typicality, adequacy, predominance, and superiority.

86.     **Numerosity.** The Class is so numerous that the individual joinder of all members is impracticable. Zeroed-In has identified that at least 1,977,486 people have been affected as a result of the data breach.

87.     **Commonality.** Common legal and factual questions exist that predominate over any questions affecting only individual Class Members. These common questions, which do not vary among Class Members and which may be determined without reference to any Class Member's individual circumstances, include, but are not limited to:

a.  Whether Defendants unreasonably delayed in notifying patients once they discovered suspicious activity on August 8, 2023.

b.  Whether Defendants unreasonably delayed in notifying victims when it completed its review of "what information was present at the time of the incident, to whom the information relates, and to which Zeroed-In customers the information belonged"[7] by August 31, 2023 but did not begin providing notice to impacted individuals until November 27, 2023.

---

[7] https://apps.web.maine.gov/online/aeviewer/ME/40/b3993ddd-2443-4645-ae45-f36dc7686236/8a125572-a897-4b0a-afc5-e6f5e6655739/document.html (last accessed 12/20/23)

c. Whether Defendants knew or should have known that their systems were vulnerable to unauthorized access;

d. Whether Defendants failed to take adequate and reasonable measures to ensure their data systems were protected;

e. Whether Defendants failed to take available steps to prevent and stop the breach from happening;

f. Whether Defendants owed a legal duty to Plaintiffs and Class Members to protect their PII;

g. Whether Defendants breached any duty to protect the personal information of Plaintiffs and Class Members by failing to exercise due care in protecting their PII;

h. Whether Plaintiffs and Class Members are entitled to actual, statutory, or other forms of damages and other monetary relief; and,

i. Whether Plaintiffs and Class Members are entitled to equitable relief, including injunctive relief or restitution.

88. **Typicality.** Plaintiff's claims are typical of other Class Members' claims because Plaintiff and Class Members were subjected to the same allegedly unlawful conduct and damaged in the same way.

89. **Adequacy of Representation.** Plaintiff is an adequate Nationwide Class and Subclass representative because he is a Class Member, and his interests do not conflict with the Class's interests. Plaintiff retained counsel who are competent and experienced in class action and data breach litigation. Plaintiff and their counsel intend to prosecute this action vigorously for the Class's benefit and will fairly and adequately protect its interests.

90. **Predominance and Superiority.** The Class  can be properly maintained because the above common questions of law and fact predominate over any questions affecting individual Class Members. A class action is also superior

to other available methods for the fair and efficient adjudication of this litigation because individual litigation of each Class Member's claim is impracticable. Even if each Class Member could afford individual litigation, the court system could not. It would be unduly burdensome if thousands of individual cases proceed. Individual litigation also presents the potential for inconsistent or contradictory judgments, the prospect of a race to the courthouse, and the risk of an inequitable allocation of recovery among those with equally meritorious claims. Individual litigation would increase the expense and delay to all parties and the courts because it requires individual resolution of common legal and factual questions. By contrast, the class-action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

91.     **Declaratory and Injunctive Relief.** The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Defendant. Such individual actions would create a risk of adjudications that would be dispositive of the interests of other Class Members and impair their interests. Defendant has acted and/or refused to act on grounds generally applicable to the Class, making final injunctive relief or corresponding declaratory relief appropriate.

## CLAIMS FOR RELIEF

### Count 1
### Negligence
### On behalf of Plaintiffs and the Class Against All Defendants

92.     Plaintiffs incorporate by reference and reallege each allegation above as though fully set forth herein.

93.     Plaintiffs were required to provide PII to Dollar Tree as a precondition for employment.

94.    Plaintiffs and Class Members entrusted their PII to Dollar Tree with the understanding that Dollar Tree would safeguard their PII.

95.    In its written privacy policies, Dollar Tree committed to taking reasonable steps to protecting PII.

96.    However, it appears nearly 2 million employees (including Plaintiff) had sensitive data "shared" with hackers without their knowledge or consent.

97.    Defendants did not take reasonable and appropriate safeguards to protect Plaintiff and Class Members' PII.

98.    Defendants had full knowledge of the sensitivity of the PII that it stored and the types of harm that Plaintiffs and Class Members could and would suffer if that PII were wrongfully disclosed.

99.    Defendant Dollar Tree knew the value and sensitivity of this information for several reasons including but not limited to the fact that it contracted with Defendant Zeroed-In to obtain an in-depth analysis of the breached material which Defendant Dollar Tree could use to its commercial benefit.

100.    Defendant Zeroed-In knew the value and sensitivity of this information for several reasons including but not limited to the fact that Zeroed-In is in the business of conducting data analysis on this type of data and is paid considerable sums for the information they can glean from the breached data.

101.    Zeroed-In additionally advertised their security and privacy practices. Specifically, Zeroed-In states in its privacy policy that "we will not review, share, distribute, or reference any Customer Data except as provided in the [subscription agreement] or as many be required by law." Defendant Zeroed-In also advertises in its security section, "We employ robust security measures to protect against the loss, misuse and alteration of the personal information under our control … The Sites are hosted in a secure server environment that uses firewalls, intrusion detection systems, and other advanced technology to protect against interference or

access from outside intruders" and affirms that "Keeping your personal information secure is our first priority."[8]

102.    Defendants violated their duty to implement and maintain reasonable security procedures and practices. That duty included, among other things, designing, maintaining, and testing Dollar Tree and Zeroed-In's information security controls sufficiently rigorously to ensure that PII in its possession was adequately secured by, for example, encrypting sensitive personal information, installing effective intrusion detection systems and monitoring mechanisms, using access controls to limit access to sensitive data, taking steps to ensure data transmission is not subject to interception or that PII is ever stored in plaintext, and regularly testing for security weaknesses and failures. Despite Zeroed-In claiming robust security measures, its inability to prevent sensitive data and PII for nearly two million individuals from falling into the hands of hackers shows otherwise.

103.    Additionally, in failing to notify its employees and customers of the breach in a timely manner, and failing to remedy the continuing harm by unreasonably delaying notifying the victims, Defendant Zeroed-In violated its duty of reasonable notification as part of their security practices. The nearly 4-month delay between the data breach and notification to employees and customers is inexcusable, resulting in foreseeable harm to them.

104.    Defendants' duty of care arose from, among other things,

   a. Defendants' exclusive ability (and Class Members' inability) to ensure that its systems were sufficient to protect against the foreseeable risk that a data breach could occur;

   b. Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted

---

[8] https://www.zeroedin.com/privacy-policy/ (Last accessed 12/29/23)

and enforced by the FTC, failing to adopt reasonable data security measures;

c. Defendants' common law duties to adopt reasonable data security measures to protect customer PII and to act as a reasonable and prudent person under the same or similar circumstances would act.

105.   Defendants' violation of the FTC Act constitutes negligence per se for purposes of establishing the duty and breach elements of Plaintiffs' negligence claim. Those statutes were designed to protect a group to which Plaintiffs belongs and to prevent the types of harm that resulted from the Data Breach.

106.   Dollar Tree is a massive national franchise with thousands of stores and tens of billions of dollars in revenue. It had (and continues to have) the financial and personnel resources necessary to prevent the Data Breach. Dollar Tree nevertheless failed to adopt reasonable data security measures. Additionally, Dollar Tree could have investigated the data security practices of Zeroed-In or otherwise taken adequate steps to ensure the transfer and analysis of this PII was secure. They failed to do so.

107.   Plaintiffs and Class Members were the foreseeable victims of Defendants' inadequate data security. Defendants knew that a breach of its systems could and would cause harm to Plaintiffs and Class Members.

108.   Defendants' conduct created a foreseeable risk of harm to Plaintiffs and Class Members. Defendants' conduct included its failure to adequately mitigate harm through negligently failing to inform victims of the breach for nearly four months after the purported first discovery of suspicious activity.

109.   Defendants knew or should have known of the inherent risks in collecting and storing massive amounts of PII, the importance of providing adequate data security over that PII, and the frequent cyberattacks against data analysis firms.

110.    Defendants through their actions and inactions, breached their duty to Plaintiffs and Class Members by failing to exercise reasonable care in safeguarding their PII while it was in their possession and control.

111.    Defendants inadequately safeguarded PII in breach of standard industry rules, regulations, and best practices at the time of the Data Breach.

112.    But for Defendants' breach of their duty to adequately protect Class Members' PII, it would not have been stolen.

113.    There is a temporal and close causal connection between Defendants' failure to implement adequate data security measures and notification practices, the Data Breach, and the harms suffered by Plaintiffs and Class Members.

114.    As a result of Defendants' negligence, Plaintiffs and Class Members suffered and will continue to suffer the damages alleged herein.

115.    Plaintiffs and Class Members are entitled to all forms of monetary compensation set forth herein, including monetary payments to provide adequate identity protection services. Plaintiffs and Class Members are also entitled to the injunctive relief sought herein.

**Count 2**
**Breach of Implied Contract**
**On behalf of Plaintiffs and the Class Against Dollar Tree**

116.    Plaintiffs repeat and reallege each fact, matter, and allegation set forth above and incorporates them by reference as though set forth in full.

117.    Plaintiffs and Class Members entered into an implied contract with Dollar Tree when they entrusted Dollar Tree with their PII as a precondition of employment.

118.    As part of these transactions, Dollar Tree agreed to safeguard and protect the PII of Plaintiffs and Class Members and to timely and accurately notify them if their PII was breached or compromised.

119.    Plaintiffs and Class Members entered into the implied contracts with the reasonable expectation that Dollar Tree's data security practices and policies were reasonable and consistent with the legal requirements and industry standards. Plaintiffs and Class Members believed that Dollar would use part of the monies earned from Plaintiffs' employment with Dollar Tree under the implied contracts and from the benefits derived from the PII to fund proper and reasonable data security practices.

120.    Additionally, Plaintiffs and Dollar Tree entered into an implied contract that the sensitive information shared, including date of birth and social security number, would be limited on a need-to-know basis and would not be disseminated when such dissemination could serve no valid business purpose.

121.    Plaintiffs and Class Members would not have provided and entrusted their PII or sought employment with Dollar Tree or would have required additional compensation for employment with Dollar Tree in the absence of the implied contract or implied terms between them and Dollar Tree. The safeguarding of the PII of Plaintiffs and Class Members was critical to realize the intent of the parties.

122.    Plaintiffs and Class members fully performed their obligations under the implied contracts with Dollar Tree.

123.    Dollar Tree breached its implied contracts with Plaintiffs and Class Members to protect their PII when it (1) failed to take reasonable steps to use safe and secure systems to protect that information; (2) disclosed that information to unauthorized third parties; and (3) failed to notify Plaintiffs and Class Members in a reasonably timely manner.

124.    Dollar Tree's disclosure of information such as social security number and date of birth to Zeroed-In also violated its implied contract with Plaintiffs because such a disclosure was not based on a "need to know" requirement. The disclosure of sensitive information such as social security number would not serve

any necessary business purpose and disclosure of other information, such as employee ages, may have been prohibited by age-discrimination laws.

125.    Plaintiffs and Class members also provided their PII to Defendant Zeroed-In either directly or indirectly through Dollar Tree as part of Zeroed-In's regular business practices and the business relationship between Defendants Dollar Tree and Zeroed-In.

126.    In accepting custody of the PII and performing data analysis on the PII and other highly sensitive data, Zeroed-In agreed to the same implied contract with Plaintiffs detailed above including but not limited to the duties to undertake reasonable and proportionate security practices, comply with legal requirements and industry standards, timely disclose any data breach, and use the benefits derived from the PII and payment from Defendants Dollar Tree to fund adequate security practices.

127.    Zeroed-In breached its implied contracts with Plaintiffs and Class Members to protect their PII when it (1) failed to take reasonable steps to use safe and secure systems to protect that information; (2) disclosed that information to unauthorized third parties; and (3) failed to notify Plaintiffs and Class Members in a reasonably timely manner.

128.    As a direct and proximate result of Defendants' breaches of the implied contract, Plaintiffs and Class Members have been injured and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit

freezes and unfreezes; time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII; the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of the Data Breach; lost benefit of their bargains and overcharges for services or products; nominal and general damages; and other economic and non-economic harm.

129.    As a direct and proximate result of the breach, Plaintiffs are entitled to relief as set forth herein.

**Count 3**
**Breach of Implied Contract**
**On behalf of Plaintiffs and the Class Against Dollar Tree**

130.    Plaintiffs repeat and reallege each fact, matter, and allegation set forth above and incorporates them by reference as though set forth in full.

131.    Plaintiffs and Class members also provided their PII to Defendant Zeroed-In either directly or indirectly through Dollar Tree as part of Zeroed-In's regular business practices and the business relationship between Defendants Dollar Tree and Zeroed-In.

132.    In accepting custody of the PII and performing data analysis on the PII and other highly sensitive data, Zeroed-In agreed to the same implied contract with Plaintiffs detailed above including but not limited to the duties to undertake reasonable and proportionate security practices, comply with legal requirements and industry standards, timely disclose any data breach, and use the benefits derived from the PII and payment from Defendants Dollar Tree to fund adequate security practices.

133.   Zeroed-In breached its implied contracts with Plaintiffs and Class Members to protect their PII when it (1) failed to take reasonable steps to use safe and secure systems to protect that information; (2) disclosed that information to unauthorized third parties; and (3) failed to notify Plaintiffs and Class Members in a reasonably timely manner.

134.   As a direct and proximate result of Defendants' breaches of the implied contract, Plaintiffs and Class Members have been injured and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII; the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of the Data Breach; lost benefit of their bargains and overcharges for services or products; nominal and general damages; and other economic and non-economic harm.

135.   As a direct and proximate result of the breach, Plaintiffs are entitled to relief as set forth herein.

**Count 4**
**Unjust Enrichment**
**On behalf of Plaintiffs and the Class Against Zeroed-In**

136.    Plaintiffs repeat and reallege each fact, matter, and allegation set forth above and incorporates them at this by reference as though set forth in full.

137.    Plaintiffs and Class Members entered into an implied contract with Defendants when they provided their PII to Defendants.

138.    As part of these transactions, Defendants agreed to safeguard and protect the PII of Plaintiffs and Class Members and to timely and accurately notify them if their PII was breached or compromised.

139.    Plaintiffs and Class Members entered into the implied contracts with the reasonable expectation that Defendants' data security practices and policies were reasonable and consistent with legal requirements and industry standards. Plaintiffs and Class Members believed that Defendants would use part of the monies earned by Defendants as a result of employment (with Dollar Tree) or paid (by Zeroed-In) to secure the PII under the implied contracts.

140.    Plaintiffs and Class Members would not have provided and entrusted their PII to Defendants in exchange for employment or would have required additional compensation in the absence of the implied contract or implied terms between them. The safeguarding of the PII of Plaintiffs and Class Members was critical to realize the intent of the parties.

141.    Plaintiffs and Class members fully performed their obligations under the implied contracts with Defendants.

142.    Defendants breached the implied contracts with Plaintiffs and Class Members to protect their PII when they (1) failed to take reasonable steps to use safe and secure systems to protect that information; (2) disclosed that information

to unauthorized third parties; and (3) failed to notify Plaintiffs and Class Members in a timely and reasonable fashion.

143.    As a direct and proximate result of Defendants' breach of implied contract, Plaintiffs and Class Members have been injured and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII; the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of Defendants' Data Breach; lost benefit of their bargains and overcharges for services or products; nominal and general damages; and other economic and non-economic harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Nationwide Class set forth herein, respectfully request the following relief:

A.    That the Court certify this action as a class action and appoint Plaintiffs and their counsel to represent the Class;

B.    That the Court grant permanent injunctive relief to prohibit Defendant from continuing to engage in the unlawful acts, omissions,

and practices described herein and directing Defendant to adequately safeguard the PII of Plaintiff and the Class by implementing improved security controls;

C.      That the Court award compensatory, consequential, and general damages, including nominal damages as appropriate, as allowed by law in an amount to be determined at trial;

D.      That the Court award statutory or punitive damages as allowed by law in an amount to be determined at trial;

E.      That the Court order disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendants as a result of Defendants' unlawful acts, omissions, and practices;

F.      That the Court award to Plaintiffs and Class Members the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses; and

G.      That the Court award pre- and post-judgment interest at the maximum legal rate and all such other relief as it deems just and proper.


## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial on all claims so triable.

Dated: 01/03/2023

/s/ Matthew B. Kaplan
Matthew B. Kaplan, D. Md. Bar No. 18724
**THE KAPLAN LAW FIRM**
1100 N Glebe Rd, Suite 1010
Arlington, VA 22201
(703) 665-9529
mbkaplan@thekaplanlawfirm.com
*Liaison Counsel for Plaintiffs and the
Proposed Classes*

**SCHUBERT JONCKHEER & KOLBE
LLP**
ROBERT C. SCHUBERT
(rschubert@sjk.law)
AMBER L. SCHUBERT
aschubert@sjk.law)
2001 Union St, Ste 200
San Francisco, CA 94123
Tel: (415) 788-4220
Fax: (415) 788-0161

*Attorneys for Plaintiffs and the Proposed
Classes*